IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DORIS W. MOORE, ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:12-cv-00015 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CENTRAL CAROLINA SURGICAL EYE ) | By: Hon. Jackson L. Kiser |
| ASSOCIATES, P.A., ) | Senior United States District Judge |
| ) | |
| Defendant. ) | |

Before me are Defendant Central Carolina Surgical Eye Associates, P.A.'s ("CCSEA") Motion to Dismiss pursuant to North Carolina Rule of Civil Procedure 9(j) [ECF No. 83], (First) Motion for Partial Summary Judgment (Allegations of Negligence Related to Dr. Matthews's Care) [ECF No. 85], and (Second) Motion for Partial Summary Judgment (Allegations of Negligent Communication, Documentation, and Dr. Stonecipher's Care) [ECF No. 87]. Although all three motions were untimely because their late filing precluded a complete briefing[1] (see Second Revised Am. Pretrial Order § IV [ECF No. 76]), I permitted the parties to argue the motions on March 11, 2013. After having reviewed the briefs, arguments of counsel, relevant law, and the relevant parts of the record, the matters are now ripe for decision. For the reasons stated below, CCSEA's Motion to Dismiss will be **DENIED**, its First Motion for Partial Summary Judgment will be **DENIED**, and its Second Motion for Partial Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

**I.     STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

This case arises from the alleged medical malpractice of Drs. C. Richard Epes, John D. Matthews, and Karl G. Stonecipher in their care of Doris W. Moore ("Plaintiff"). The three

---

[1] As a result of late afternoon and evening filings on Friday and more on Saturday, however, all briefs were submitted.

doctors are all allegedly employees of Central Carolina Surgical Eye Associates. CCSEA is incorporated in North Carolina and has its principle place of business in Greensboro, North Carolina. (Compl. ¶¶ 81−82.)[2] Dr. Epes is a cataract surgeon, Dr. Matthews is a retinal specialist, and Dr. Stonecipher is a corneal specialist; all are ophthalmologists. Only Dr. Matthews was sued individually; the cause of action against him has since been dismissed.[3]

On June 21, 2011, Dr. Epes performed left eye cataract surgery on Plaintiff, who is diabetic. According to Plaintiff, during her cataract surgery, Dr. Epes dislodged the intraocular lens ("IOL") that he had put into her eye, and the IOL fell back into the vitreous in the posterior segment of Plaintiff's eye. During the course of the surgery, Plaintiff claims she was alert and could feel the medical instruments in her eye, causing her significant pain. (Compl. ¶ 138.) According to Dr. Epes's original surgery notes, the posterior capsule of Plaintiff's eye was torn "by the IOL, necessitating an anterior vitrectomy." (Id. ¶ 146.) His amended post-operative note states that the posterior capsule was torn "with unknown etiology." (Id.) Although a CCSEA employee informed Plaintiff's husband that Dr. Epes had dropped the IOL into Plaintiff's eye and that she would require corrective surgery, Plaintiff was discharged home, allegedly on Dr. Epes's order. (Compl. ¶ 155.)

The next day, June 22, 2011, Plaintiff saw Dr. Matthews in Martinsville, Virginia, for a post-operative appointment. Dr. Epes had referred Plaintiff to Dr. Matthews for a retinal evaluation. (Compl. ¶ 158.) Prior to the appointment, Plaintiff alleges Dr. Epes and Dr. Matthews had not spoken about Plaintiff's surgery. Dr. Matthews found that Plaintiff had a

---

[2] Internal references to the Complaint are to the Second Amended Complaint, filed on September 11, 2012 [ECF No. 49].

[3] Dr. Matthews was dismissed from this action without prejudice on September 24, 2012. (See Order Dismissing Action [ECF No. 53].)

dislocated IOL in her left vitreous, significant corneal edema, and significant haziness of her vision. Dr. Matthews's plan for Plaintiff included a pars plana vitrectomy ("PPV") of the left eye, removal of the dislocated IOL, and placement of a second IOL with sutures in her left eye when her cornea cleared. (Id. ¶ 165.) Plaintiff claims Dr. Matthews did not feel that urgent or immediate intervention was required. (Id. ¶¶ 163, 166.) He referred Plaintiff to either Dr. Epes or Dr. Stonecipher because he felt that she should be treated by a corneal specialist or her original surgeon. (Id. ¶ 167.)

On June 27, 2011, Plaintiff saw Dr. Stonecipher regarding her left eye condition. (Id. ¶ 200.) He saw her again on July 11, September 7, October 19, and December 5. On her last visit, Dr. Stonecipher allegedly referred Plaintiff back to Dr. Matthews for IOL removal and sutured posterior capsule IOL in the left eye. (Id. ¶ 231.)

Plaintiff saw Dr. Matthews again on January 9, 2012.[4] At that appointment, "Dr. Matthews alleges that . . . the clearing of [Plaintiff's] left cornea permitted surgery." (Id. ¶ 240.) He ultimately concluded, however, that the swelling of her retina prevented additional surgery at that time. (Id. ¶ 242.) He further believed that she suffered from cystoids macular edema and diabetic macular edema, caused in part by Dr. Epes's June 21, 2011, cataract surgery. (Id. ¶ 252.) Dr. Matthews prescribed eye drops to reduce the edema, and advised Plaintiff to return in six weeks. (Id. ¶¶ 253−54.)

On January 30, 2012, Plaintiff saw Dr. Keith Walter at Wake Forest University for her left eye condition. (Compl. ¶¶ 255−56.) At that appointment, Dr. Walter diagnosed the cause of Plaintiff's "left eye problems as the dislocated intraocular lens." (Id. ¶ 257.) On March 6, 2012,

---

[4] Plaintiff says that appointment occurred in Martinsville, while Dr. Matthews claims that it occurred in Greensboro.

Drs. Walter and Charles Richards performed a left eye PPV and left secondary IOL placement for Plaintiff. (Id. ¶ 259.) Plaintiff has been treated by Wake Forest Eye Center ever since.

Plaintiff alleges medical malpractice intra-operatively by Dr. Epes and post-operatively by Drs. Matthews and Stonecipher, all of whom worked for CCSEA at the time of the alleged negligence, and all of whom were performing their regular job functions at the time of the alleged negligence. She alleges Dr. Epes committed malpractice by: negligently performing her eye surgery; placing the IOL in her vitreous and failing to remove it or prevent it from falling back; allowing the dislocated IOL to remain in her eye; and dictating, reviewing, and signing an inaccurate and incomplete operative note. She also alleges Drs. Matthews and Stonecipher negligently treated her by: failing to see her to remove the dislocated IOL within twenty-four hours of her original surgery; not communicating with Dr. Epes about her June 21, 2011, cataract surgery; and failing to ensure that the dislocated IOL (and possibly retained lens fragments) were immediately removed. Furthermore, Plaintiff's alleged post-operative corneal edema was not a valid reason to delay surgery to remove the dislocated IOL. Moreover, Dr. Matthews did not immediately or urgently follow through on his June 22, 2011, plan of action by performing a PPV. As a result, Plaintiff alleges that she has undergone unnecessary and painful additional treatment, has incurred significant additional expense, and will require on-going care for her left eye for the foreseeable future.

On February 22, 2013, CCSEA filed the three motions at issue. Plaintiff responded on March 7 and 8. CCSEA filed its replies on Friday, March 8, and Saturday, March 9. The matter was set for oral argument at 9 a.m. on Monday, March 11, 2013, at which time the parties appeared and argued their respective positions.

## II. STANDARD OF REVIEW

CCSEA's first motion is a Motion to Dismiss pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) states:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C.R. Civ. P. 9(j). "Failure to comply with Rule 9(j) is ground for dismissal of a state medical-malpractice claim filed in federal court." Williams v. Haigwood, Case No. 5:08-CT-3138-BO, 2012 WL 4483883, at *7 (E.D.N.C. Sept. 27, 2012). Moreover, "'even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate.'" Morris v. Se. Orthopedics Sports Med. & Shoulder Ctr., 199 N.C. App. 425, 437 (2009) (quoting Ford v. McCain, 192 N.C. App. 667, 672 (2008)).

CCSEA's second and third motions seek partial summary judgment. Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(c); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be found where there is only a scintilla of evidence favoring the nonmovant; rather, a court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249–50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, a court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

  The movant has the initial burden of pointing out to the court where the deficiency lies in the non-movants's case that would make it impossible for a reasonable fact-finder to bring a verdict in the non-movants's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A moving defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case. Id. at 322–23. It is then up to the plaintiff to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case. Emmett v. Johnson,

532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). When the defendant provides affidavits and other materials with his motion for summary judgment, the plaintiff must respond with affidavits, deposition testimony, or as otherwise provided in Fed. R. Civ. P. 56(c). Celotex Corp., 477 U.S. at 324; Pension Ben. Guar. Corp. v. Beverley, 404 F.3d 243, 246 (4th Cir. 2005). Mere allegations, denials, references to the complaint, or oral argument is insufficient to rebut a defendant's motion which is supported by evidence. Fed. R. Civ. P. 56(e)(2); Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); Beverley, 404 F.3d at 246. "If the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" Colkitt, 455 F.3d at 201 (quoting Celotrex Corp., 477 U.S. at 322)).

### III. ANALYSIS

Both CCSEA's Motion to Dismiss and its First Motion for Partial Summary Judgment may be dispensed with by the same analysis, as each motion rises and falls on a determination of whether Drs. John Wood and Keith Walter, Plaintiff's designated experts, would qualify as experts under N.C. Rule 702.[5] Because it is clear that they do qualify as experts, I can easily

---

[5] The parties concede that North Carolina law applies, and I agree. Plaintiff's surgery—the basis for her claim and the subsequent treatments—occurred in North Carolina. Under well-settled choice of law doctrines, I apply the choice of law rules of this court's forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938). In an action for tortious conduct, such as negligence, Virginia applies the doctrine of *lex loci delecti* and selects the law of the site of the tortious activity. See Ryder Truck Rental, Inc. v. UTF Carriers, Inc., 790 F. Supp. 637, 641 (W.D. Va. 1992). Additionally, the parties apparently agree that Rule 9(j), as well as North Carolina Rule of Evidence 702 regarding the admission of experts in a medical malpractice action, control as well. I likewise agree that each of these provisions, although they "may be viewed as 'procedural' rules, they are 'intimately bound up' with a state substantive rule, the standard of care itself." Peck v. Tegtmeyer, 834 F. Supp. 903, 909 (W.D. Va. 1992). Therefore, the relevant North Carolina rules "are applicable in a diversity case." Id. at 910.

conclude that Plaintiff could have "reasonably expected" her pre-filing reviewing expert(s) to so qualify, thus satisfying Rule 9(j).[6]

CCSEA asserts that discovery has uncovered that Plaintiff's two disclosed experts, Drs. Wood and Walter, will not qualify as experts under the applicable North Carolina Rules.[7] See N.C.R. EVID. 702(b); Morris v. Se. Orthopedics Sports Med. & Shoulder Ctr., 199 N.C. App. 425, 437 (2009). CCSEA contends that, because Dr. Wood, a Board-certified ophthalmologist, is not a retinal specialist and does not perform the procedure at issue, he is not a proper expert witness. Dr. Matthews, who did not perform any procedure on Plaintiff (only Dr. Epes performed surgery on Plaintiff), is a retinal specialist. Dr. Walter, a Board-certified ophthalmologist,[8] testified that he does not remove IOLs that have fallen back into the vitreous of the eye. Therefore, CCSEA asserts, he is not a qualified expert to testify in this case.

Federal courts have held that Rule 9(j) is state substantive law and therefore should be implemented by a federal court hearing a diversity action where the court employs North Carolina substantive law. See, e.g., Williams, 2012 WL 4483883, at *7. Additionally, Rule 9(j) necessarily implicates North Carolina Rule of Evidence 702, which sets forth the qualifications of expert witnesses in medical malpractice actions. Essentially, Rule 702 requires that an expert witness who is offered against a specialist be either (a) a specialist in the same field, or (b) a

---

[6] "Any complaint alleging medical malpractice by a health care . . . in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless . . . [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care . . . ." N.C.R. CIV. P. 9(J).

[7] Plaintiff argues that CCSEA has no idea who her pre-filing reviewing physician(s) was. CCSEA argues that, despite Plaintiff's attempts to hide the ball with that information, it uncovered that Dr. Walter was Plaintiff's pre-filing reviewing physician during his deposition. If that is true, Rule 9(j) is satisfied, as discussed herein. If Dr. Walter was *not* Plaintiff's pre-filing reviewing physician, then CCSEA lacks any evidence to support its motion. In either event, the motion should be denied.

[8] Dr. Walter was also one of Plaintiff's physicians at Wake Forest Eye Center.

specialist in a similar field that includes within that specialty the performance of the procedure that is at issue. CCSEA claims that Dr. Wood is not qualified to give expert testimony regarding Dr. Matthews because Dr. Wood is not a retinal specialist. CCSEA says that Dr. Walter does not remove dislocated IOLs, so he is not qualified as an expert. This is important because, if Plaintiff did not reasonably believe that Drs. Wood and Walter would qualify to give expert testimony, their statement in compliance with Rule 9(j) is in error and warrants dismissal. When analyzing a Motion to Dismiss under Rule 9(j), "[w]hat must be established in discovery is not whether the witness is in fact not an expert, but whether there is ample evidence in the record that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that the witness would have qualified as an expert under Rule 702." Morris, 199 N.C. App. at 437−38 (citing Trapp v. Maccioli, 129 N.C. App. 237, 241 (1998)).

      CCSEA parses the relevant statute far too thinly. If Drs. Wood and Walter are specialists in the same field as the doctor(s) at issue, they are not required to "perform[] . . . the procedure that is the subject of the complaint . . . ." The Rule is clear:

> In a medical malpractice action . . . , a person shall not give expert testimony on the appropriate standard of health care . . . unless the person is a licensed health care provider . . . and meets the following criteria:
>
> If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
>
> a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; ***or***
>
> b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

N.C. RULE EVID. 702(b)(1) (emphasis added). Therefore, if Drs. Wood, Walter, Epes, Matthews, and Stonecipher are all disciples of the same discipline, that ends the inquiry.

CCSEA contends that, because Dr. Wood is a cataract surgeon and Dr. Walter is a corneal specialist, neither can testify against Dr. Matthews, a retinal specialist. I do not agree. All of them are ophthalmologists, and both Drs. Wood and Walter are Board-certified in their field.[9] According to the Attorney's Dictionary of Medicine, an "ophthalmologist" is "[a] physician who *specializes* in the diagnosis and treatment of eye disorders." ATTORNEY'S DICTIONARY OF MEDICINE O-63 (emphasis added). Accord Williamson v. Lee Optical of Ok., 348 U.S. 483, (1955) ("An ophthalmologist is a duly licensed physician who specializes in the care of the eyes."); McPhee v. Reichel, 461 F.2d 947, 951 (3rd Cir. 1972) (holding that a jury instruction that a ophthalmologist would be held to the standard of care of a general practitioner was error; a specialist owes a higher standard of care). Because they are all ophthalmologists, they are all members of the same specialty; that is all that N.C. Rule 702(b)(1)(a) requires. CCSEA has not offered any case law to support its argument that the rule must be pared down to subspecialties, and I see no reason to impose such a tortured reading on the statute. Therefore, Drs. Wood and Walter are qualified as experts.

Since Plaintiff has designated appropriate experts, it is clear that, if either of these physicians was her pre-filing reviewing physician, her attorneys could have "reasonably expected" that they would qualify as experts. Therefore, CCSEA's Motion to Dismiss is without merit. Likewise, because Plaintiff has expert testimony to offer against Drs. Epes, Matthews, and Stonecipher, CCSEA's First Motion for Partial Summary Judgment must also be denied.

In CCSEA's final motion, it moves for partial summary judgment on the issue of Dr. Stonecipher's care. CCSEA asserts that no expert testified that Dr. Stonecipher deviated from the standard of care. Additionally, no expert holds the opinion that the lack of communication

---

[9] Drs. Epes, Matthews, and Stonecipher may be as well; the record before me at this point does not say.

among the doctors (as well as Dr. Epes's questionable post-operative note(s)) caused any of Plaintiff's injuries.

Plaintiff concedes that neither of her experts holds the opinion that Dr. Stonecipher deviated from the standard of care. Therefore, summary judgment should be granted on that point. Additionally, Plaintiff concedes that there is no evidence as to causation with regard to Dr. Epes post-operative note(s), *i.e.*, no one will testify that the either incorrect or improper notes caused Plaintiff any harm. Summary judgment will be granted on that point as well.[10]

The only other aspect of CCSEA's second motion for partial summary judgment refers to allegations of miscommunication, non-communication, or negligent communication among Plaintiff's physicians generally, and between Drs. Matthews and Stonecipher specifically. CCSEA says that Dr. Walter does not believe the communication among the doctors before September 2011 violated the standard of care. (See Keith Walter Dep. 61:8–12, Feb. 14, 2013.) Communication among the doctors *after* that point, however, may have been negligent. Dr. Walter's testimony supports the conclusion that he believes the communication among the doctors after September 2011 was negligent:

> So my thought is there was some deviation from the standard of care and that Dr. Matthews, which later on proved this to be true, refused to do her surgery, refused to take care of a secondary IOL that had been displaced in the back of her eye. So -- so I bet Dr. -- my guess is Dr. Stonecipher communicated to -- to Dr. Matthews, and Dr. Matthews, for some reason, did not want to do it, not in September, not in October, not in January when he finally did see the patient.

---

[10] I note that the Complaint does not list individual Counts related to discrete acts of alleged malpractice. The practical effect of this ruling, then, is that Plaintiff may not argue that Dr. Stonecipher was negligent, or that Dr. Epes's post-operative note caused Plaintiff any harm. I make no ruling as to the relevancy of this evidence as it relates to other allegations of negligence or malpractice. That ruling is better suited to be rendered at trial after the parties have had a chance to see if the evidence is being used for a proper or improper purpose. Adherence to Federal Rule of Civil Procedure 10 may have avoided this problem. See Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.").

(Walter Dep. 60:23-61:7.) It appears that there are material facts in dispute regarding the communication of the doctors at CCSEA and whether the lack of communication caused any of Plaintiff's injuries or worsened her condition or prognosis. Therefore, CCSEA's second motion for partial summary judgment should be denied on that point.

### IV. CONCLUSION

For the foregoing reasons, it is clear that Plaintiff and her attorneys could have "reasonably expected" that Drs. Wood and Walter would qualify as expert witnesses. Rule 9(j) was thus satisfied, and the Motion to Dismiss is denied. Additionally, because Drs. Wood and Walter are both ophthalmologists, they are licensed physicians in the same specialty as the doctors against whom they propose to offer testimony. They qualify as experts in this case, and CCSEA's First Motion for Partial Summary Judgment is denied. Finally, summary judgment is appropriate on the issues conceded by Plaintiff with regard to CCSEA's second motion for partial summary judgment. There are, however, genuine issues of material fact with regard to communication among Plaintiff's treating physicians. Summary judgment is denied as to that point, and the matter is held over for trial.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 15th day of March, 2013.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE